92 F.3d 1188
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond E. SMITH, Jr., Defendant-Appellant.
 No. 95-2538.
 United States Court of Appeals, Seventh Circuit.
 Argued May 28, 1996.
Decided July 29, 1996.
 
 Before POSNER, Chief Judge, and CUDAHY and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 On three separate occasions during August and September of 1992, Raymond Smith sold crack cocaine to a government informant. In October of that year, the United States indicted him on three counts of violating 21 U.S.C. § 841(a)(1). After a jury trial, Smith was convicted and sentenced, but we overturned that conviction in United States v. Smith, 31 F.3d 469 (7th Cir.1994). After a new trial on remand, a jury again convicted Smith of the same three counts and the district court sentenced him to 97 months in prison followed by four years of supervised release. Smith now challenges different aspects of his trial and sentencing.
 
 
 2
 Smith first argues that § 841 is unconstitutional as applied to him, arguing that it is the product of an illegal exercise of the commerce power as defined in United States v. Lopez, 115 S.Ct. 1624 (1995). This argument depends upon the presumption that his conduct, like the conduct in question in Lopez, was purely intrastate conduct not within the reach of the commerce power. We reject this argument because we reject its essential premise. Selling cocaine can never be purely intrastate conduct as long as the cocaine sold has its origins outside the seller's state. See Champion v. Ames, 188 U.S. 321 (1903). Because it is undisputed that cocaine comes from outside Illinois, Smith's crime does not involve purely intrastate conduct and § 841 is constitutional, at least as applied to him.
 
 
 3
 Smith also argues that his conviction should be reversed because he was not allowed to tell the jury about the sentencing consequences of a guilty verdict. Before the trial, the government made a motion in limine to prevent Smith from telling the jury about the sentences for the crimes with which he was charged. The district court granted the motion, but Smith contends that this was error. He believes that the district court's ruling effectively prevented the jury from having the opportunity to exercise its power to nullify the law. In his view, juries need to know the sentencing consequences of guilty verdicts in order to recognize proper occasions for nullification. Without making any comment on the propriety of jury nullification, we note that the practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored. See Shannon v. United States, 114 S.Ct. 2419, 2424 (1994). Given this disfavor, we cannot conclude that the district court erred here in granting the government's motion in limine, particularly because decisions of this sort are reviewed only for the abuse of discretion. United States Guyton, 36 F.3d 655, 660 (7th Cir.1994).
 
 
 4
 Smith's last challenge to his conviction pertains to the district court's jury instructions on the defense of entrapment. The district court employed the standard instruction on entrapment for this circuit, and it supplemented that instruction with a definition of "inducement" for the purposes of applying the standard instruction. The definition used by the district court exactly follows one that we approved in United States v. Ellis, 23 F.3d 1268 (7th Cir.1994), but Smith objected to the supplement at trial and renews his arguments before us. As he sees it, the supplemental instruction is improper in his case because it was not given under the same circumstances as in Ellis. In Ellis, the district court provided the jury with a supplemental definition of "predisposition" to go along with the definition of "inducement." Id. at 1273. Smith believes that the district court here changed the emphasis of the entrapment instruction as a whole and thereby distorted the law by omitting the definition of "predisposition." We do not agree that the district court distorted the law or misled the jury by providing a supplemental instruction that is consistent with the law in this circuit. Judges have discretion to determine when the nature of a case requires supplementary jury instructions. See id. at 1274. If the circumstances of a case make one aspect of an instruction particularly important, a district court may choose to supplement that instruction to elaborate on the crucial point. When the supplement accurately reflects the state of the law, as the instruction did here, we will not second-guess the district court's choice.
 
 
 5
 Smith raises a number of challenges to his sentence, all of which relate to the distinction between cocaine powder and cocaine base. Under the terms of § 841 and § 2D1.1 of the sentencing guidelines, possession of the latter is subject to a more severe punishment than possession of the former. Smith received the more severe punishment, but he offers several reasons why he should not.
 
 
 6
 He first makes a general challenge to the constitutionality of the distinction in both the statute and the guidelines. He argues that cocaine powder and cocaine base are, at least in chemical terms, the same thing and that the distinction between them is irrational thus violating the Due Process Clause of the Fifth Amendment. In the alternative, he argues that, even if the distinction is constitutional, it is ambiguous and provides an occasion for the operation of the rule of lenity which requires that a court should not interpret an ambiguous statute so as to increase the penalty that it imposes on an individual. See Bifulco v. United States, 447 U.S. 381, 387 (1980).
 
 
 7
 Smith initially raised a version of this argument in his unsuccessful motion for a new trial, relying on equal protection principles rather than due process principles. But he renewed the argument orally at his sentencing hearing, noting that it is an argument that properly applies to sentencing and specifically mentioning the Due Process Clause. The government believes that by arguing in this fashion, Smith did not provide the district court with an opportunity to directly consider the questions he raises. Thus the government insists that this argument is waived. We do not find a waiver here because Smith did alert the district court to his contention that the distinction between cocaine powder and cocaine base was unconstitutional or, at least impermissibly vague, and he did assert the specific constitutional rights pertinent to this contention. See United States v. Davis, 15 F.3d 1393, 1406 (7th Cir.), cert. denied 115 S.Ct. 250 (1994). But even though the argument is not waived, it is unavailing. On previous occasions, we have expressly rejected the idea that the distinction between cocaine powder and cocaine base, in either § 841 or § 2D1.1, violates the Due Process clause as well as the idea that the distinction is ambiguous. See United States v. Henry Booker, 70 F.3d 488 (7th Cir.1995).
 
 
 8
 Smith next maintains that he should have been sentenced for selling cocaine powder, not cocaine base, regardless of the legality of the distinction between the two. He contends that the district court had insufficient evidence to support its determination that the substance he sold was cocaine base. At trial, the government offered the testimony of an expert witness who tested the substance and expressly asserted that it was cocaine base. In determining Smith's base offense level, the district court relied on this testimony, and Smith contested this reliance at the sentencing hearing, arguing rather indirectly that the expert simply was not credible when he testified about the nature of the substance. On appeal, Smith continues this line of attack, insisting that the expert's testimony did not conclusively establish that the substance in question was cocaine base. Given the substance of the expert's testimony, and given our deference to factfinding by the district court in a sentencing hearing, we cannot accept Smith's arguments. See United States v. Garcia, 69 F.3d 810, 818 (7th Cir.1995).
 
 
 9
 In his final argument, Smith contends that the district court abused its discretion under § 5K2.0 of the guidelines. According to that section, the district court may impose a lesser sentence than the one that the guidelines prescribe if it finds that the defendant's case involves mitigating circumstances that the Sentencing Commission did not contemplate when establishing the guidelines. Smith finds such a mitigating circumstance in the fact that African-Americans are subject to the higher penalties associated with cocaine base more often than any other racial or ethnic group. Noting that the Sentencing Commission itself has expressed concern with the disparate impact of these penalties, he suggests that the district court should have accounted for this apparent inequity by reducing his sentence.
 
 
 10
 Our review of decisions made under 5K2.0 is quite limited. We can review a district court's legal conclusions about the extent of its discretionary authority to depart downward. United States v. Arrington, 73 F.3d 144, 146 (7th Cir.1996). But we have no jurisdiction to review the exercise of discretion. United States v. Larkins, 83 F.3d 162, 168 (7th Cir.1996). The argument that Smith presents to us relates to the extent of the authority to depart, and we have recently rejected it, holding that the disparate impact of the guidelines is not the sort of mitigating circumstance that activates a district court's discretionary authority. United States v. Terrel Scott Booker, 73 F.3d 706, 710 (7th Cir.1996). Moreover, Smith did not present this argument to the district court. He did ask the court to reduce his sentence according to § 5K2.0, but the circumstance to which he referred was one involving family hardship. Given the nature of the district court's decision, it was an exercise of discretion, not a legal ruling about the extent of discretion, and is therefore not subject to our review.
 
 
 11
 For these reasons, the judgment of the district court is
 
 
 12
 AFFIRMED.